Case 14-6230 Brian Starks v. Joe Easterling Oral argument, 15 minutes per side Anne Marie Moyes for the appellate Good morning, Your Honors. I would like to reserve three minutes for rebuttal. You may. Your Honors, Brian Starks, my client, was sentenced to die in prison for a crime he committed as a child. Can you keep your voice up? I'm sorry. Brian Starks was sentenced to die in prison for a crime he committed as a child. His sentence of life imprisonment plus 11 years offers... He wasn't really sentenced to die, was he? He was sentenced to a fixed term. Well, he was sentenced to life plus 11 years. And under that sentence, he will not become eligible for parole until he is about 71 years old. I mean, I'm sorry, 77 years old. And his life expectancy is 71 years old. So he will not become eligible for release until he is well past life expectancy. So I assume if we're looking at life expectancy tables, somebody lives less than what's in the table, somebody lives longer. Is that correct? That's correct. What I would say is that when you take somebody who's sentenced to natural life or life without parole, there's still some remote prospect of release. They could be granted executive clemency. I mean, it's not impossible that they could be released. But I think that when you take a person like my client that was sentenced to a term that exceeds his life expectancy, his chance of release is actually no less remote than that. And this is especially true when you consider that people who are incarcerated have lower life expectancy than people in the general population. The district court found that giving the relief that your client is seeking was barred by Bunch, I guess. Is that how you pronounce that? So how do we get around? Assuming we agree with you, how do we get around Bunch? Okay, I think there are several ways to distinguish Bunch. First, in Bunch, the court addressed Miller just in dicta. And so I think any discussion of it. I just can't hear the end of your sentences. I'm sorry. It could be me. Can you try to keep your voice up? I'm sorry. I do have a quiet voice. I apologize. I will try to project that. Can you turn up the speaker, please? I think there are several ways to distinguish Bunch. First, in Bunch, the court discussed Miller, but that was merely in dicta. And so I think, first of all, it's not binding on this court in that the discussion was dicta. Secondly, the Bunch case is different from this case. In this case, my client was sentenced to life plus 11 years. He was sentenced to life. And we looked to, you know, what his release date would be under the sentence that was imposed. In Bunch, there were multiple different offenses. No term that he was sentenced to was longer than 10 years. And those different sentences were stacked. And so what the court said was that when you take an aggregate sentence of fixed-term sentences put together, where you had distinct criminal acts, and there were sentences for those distinct criminal acts, that that's different. But doesn't Bunch blow up your statistical table argument? Bunch found that a sentence of 89 years was permissible. Well, it found that it was permissible because it was an aggregate fixed-term sentence. They limited Graham's holding to merely addressing cases of life without parole. Explain to me. I mean, that seems to me that's a distinction without a difference. So explain to me why that dictates a different outcome in this case. Why is 89 years okay but a fixed sentence where parole is possible but not until age 77 is not okay? How could that be? When we look at Graham and Miller and Montgomery, I think we have to look at their language and what they're talking about. They are talking about life sentences. And in two of those three cases, they were talking about sentences that were expressly articulated as life without parole. In Graham, the sentence was actually articulated as life, but the court looked to the parole rules. And under Florida law, parole had recently been abolished, so there was no prospect of parole. But in each case, they were examining life sentences, and they were saying that— Here we have life with parole. Well, we have life with parole after 51 years. Has the Supreme Court spoken to life with parole even when it's something like 51 years? I think what the Supreme Court has done is articulated principles that they applied to a sentence of life without parole. Does that make the sentence contrary to or unreasonable application of those three cases? I can definitely address that. But just to finish my answer, when you look at the language of Graham and Miller, the court repeatedly says things like that it is unconstitutional to condemn a juvenile offender to die in prison. It is unconstitutional to sentence him to a lifetime in prison. That what is required is that he be given a meaningful or realistic opportunity for release. When you apply those principles to a sentence like at issue in our case, then our sentence is unconstitutional. It effectively— Did the court say it's unconstitutional to do that, or it's unconstitutional to have a mandatory rule? Okay, so in Graham, it was unconstitutional. It was categorically unconstitutional for non-homicide offenses. In Miller, what the court said was that a certain procedure is required, that the court must at least take into account the offender's age. But what the court made further clear in Montgomery is that there are certain— that in most cases, homicides committed by youth reflect intransient immaturity was the term they used, the bulk of homicides committed by juveniles, and that in those—for those types of crimes, it is categorically unconstitutional to impose a sentence that affords no prospect of release on that class of defendants. We don't have a categorical prohibition here. And so, I mean, you make an excellent policy argument. I doubt anybody disagrees with that. But the problem is when we eventually work our way through, we get to ad pedeference. And then was the state court reading of whether or not you get the extension that you want of Graham and then Miller contrary to or an unreasonable application of? Even if I agree with you, I don't see how I get around that. So I think there are a couple of ways that I believe we get around it. One is that the Tennessee Court of Criminal Appeals confronted materially indistinguishable facts and arrived at an opposite result. When you look at the two petitioners in Miller, one of them, Contrell Jackson, he committed a felony murder that took place in the course of a robbery, and he received a sentence of life without parole. My client committed a felony murder in the course of a robbery. So both defendants were convicted of felony murder and the underlying robbery. Contrell Jackson got life without parole. My client got life plus 11 years. Contrell Jackson was effectively sentenced to die in prison. My client was effectively sentenced to die in prison. I don't think those are materially distinguishable. He might die in prison. He might die because he died a week after he got there. We don't know what will happen there. But he has a possibility of parole here. I think saying he might die in prison is not accurate. I think he almost certainly will die. It's getting pretty close to these ages. Don't forget. Well, unfortunately for Mr. Starks, he's sitting in a prison system that affords inadequate health care, and there are all sorts of studies that show that he's unlikely to even meet his life expectancy. So I think that in those circumstances, he almost certainly will die in prison. I mean, he would have to survive five years past a life expectancy that does not take incarceration into account. You have taken up this concept that you're arguing persuasively about you look at the health care provided in prisons and you look at the life expectancy tables to determine if a sentence is unconstitutional. It has not, to my knowledge. So then how can it be contrary to an unreasonable application of? Well, the Supreme Court has remanded cases under Miller and Graham for exploration of different issues. In Montgomery, the court vacated the sentence and remanded so that the state court could consider whether Mr. Montgomery's crime reflected intransient immaturity or irreparable corruption. So, you know, there are issues that the state court- What was the sentence? So he was sentenced to life without parole. Is there any case where the court has looked to a term of years and said this is effectively life? There is not a case, to my knowledge, where the U.S. Supreme Court has applied that analysis. But I think when we consider AEDPA, there are all sorts of situations where there is a rule adopted by the Supreme Court and we apply that rule to different facts. And I think that- I believe that the rule of Miller is that you cannot condemn a juvenile to die in prison, that you must give him a meaningful, realistic opportunity for release. And if you apply that rule to the facts in Mr. Stark's case- Is the language meaningful opportunity for release anywhere in Miller? It is. It is in the exact holding- Let me put it another way. Is it in there any place other than in the context of the without parole sentence? I mean, obviously, without parole does not give you a meaningful opportunity for release. But aside from discussing it in the context of those two words, is there any suggestion that we apply that principle in cases where there is the possibility of parole? Well, clearly the sentence that was at issue in Miller was a life without parole sentence. So the discussion revolved around that. But, I mean, there is a clear articulation more so and more repeatedly in Graham than in Miller, but it is quoted in Miller that says that there must be a meaningful or realistic opportunity for release. Was that part of the holding in the case that involved this fixed term, or was that dicta? So now you're- are you talking about Bunch now? No. In Miller? Yes. We're still on Miller. The language about meaningful opportunity for release. Was the language in that talking about only in connection with without parole, or was it also talking about more general things, which is how you want to apply it here? And if so, was that part of the holding, or was it dicta? Well, what the court said in its holding is, we therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. And then they cite Graham and give a parenthetical that says, So they qualify their holding by saying that that is what is required, that you don't have to guarantee release, but the opportunity for release must be meaningful. And in Graham, the court also uses the word realistic. So, I'm not sure I understand the sentencing scheme that you- that the state has. In many states, the felony will merge with the murder, and you get one life sentence. So, you're saying that doesn't happen here, or does it- It does not happen in Tennessee. Somebody can get additional time and routinely does for the underlying felony. So, even though the felony- the fact that it's a felony murder really elevates a sentence. You know, I mean, it makes a murder- it automatically makes a murder first degree that might not otherwise be. Right. But, you know, despite the fact that the felony subjects somebody to longer time you also can get additional time for that underlying- When you say can, is it routinely done, or is it done only in certain circumstances? So, routinely people are convicted of both the underlying felony and felony murder, and then the court has discretion about whether to run the time concurrent or consecutive. What? Then the court has the discretion whether to run the time concurrent or consecutive. And so, the trial court in Mr. Stark's case ran the 11 years consecutive, but the factors that the court took into account in making that- in deciding whether to run the 11 years concurrent or consecutive, none of those revolved around age. None of the what? Revolved around age. So, his age was not taken into account in the determination of whether to run that 11 years concurrent or consecutive. Okay, but is it a discretionary matter, or is it like if certain conditions are met then you impose it consecutive? No, it's discretionary. But everybody gets sentenced for both. The only question is whether it's concurrent or consecutive? Correct. I mean, theoretically I think somebody could, I suppose, be charged with just the felony murder, and they didn't- at trial they did decide not to proceed on the indictment- the indicted charge of the underlying felony. I mean, I don't know that they're required to proceed on both, but in cases that I've seen they typically do. Okay. Thank you. All right, thank you. You'll have your rebuttal. Mr. Stahl. Good morning, Your Honors. May it please the Court, Michael Stahl for the Warden Joe Easterling. State court's rejection of Petitioner's constitutional challenge to his sentence of life with parole pursuant to Miller v. Alabama was not an unreasonable application of clearly established federal law. Let's assume, and this is a hypothetical, let's assume that Mr. Starks has presented evidence to the court that no male relative of his, no male in his family, has ever lived past the age of 50. Make a difference. Not under the statutory guidelines that the court follows, Your Honor. The charge of first-degree felony murder carries with it a sentence of life with the possibility of parole, where you're eligible for parole after 51 years. The charge of attempted especially aggravated robbery, which Mr. Starks was also convicted of, that constitutes discretion of the court with regard to whatever sentence. What I want to know is where do you cut this thing off, this argument, maybe? That's a little better evidence than what we've been presented with insurance tables. You cut it off where the Supreme Court cuts it off, Your Honor. Under the standard for habeas relief, the Supreme Court is required to clearly establish its precedent, and as this court has already alluded to, the Supreme Court has never addressed the issue of whether or not a specific amount of time is required under a sentence of life with parole. What if he was sentenced to 100 years? It makes no difference, Your Honor. Under established, clearly defined Supreme Court precedent. But there's no number at which, I mean, if he were sentenced to 200 years under your formula, that meant he'd be eligible for parole at 120. It still would be constitutional. The Supreme Court has never addressed that issue. Let me ask you. But further, the Supreme Court has told us that a state is under no obligation to guarantee parole to a defendant during his natural life. That's the language they've used. So your position is that no term of yours is the equivalent of life for purposes of analysis under these cases? It's my position, and it's this court's position as well, Your Honor. This court has previously established in Bunch v. Smith in 2012 and Goins v. Smith in 2014 that the Supreme Court has never considered a fixed-term aggregate consecutive sentence analysis. And even in those cases, in Bunch v. Smith, where 84 years were found to be an appropriate sentence that didn't deprive the defendant of the possibility of parole. I really think it's informative, but I don't think it's really. . . Those cases dealt with consecutive sentences, and none of it was really mandatory. Well, in this case, the consecutive 11-year sentence wasn't mandatory either, Your Honor. And attendant circumstances were taken into account by the trial court in deciding to impose a consecutive sentence. Now, those 11 years are only required to be served at 30 percent. So you're really only talking about 3.3 years, in addition to when he would be eligible for parole at 51. The court in Goins v. Smith determined that an 89-year fixed-term consecutive sentence did not constitutionally deprive that defendant of the opportunity for parole, even where that could be considered the functional equivalent of life in prison. I think that's the wrong analysis, at least from my point of view, because none of that was . . . Unless I'm mistaken, that stuff wasn't mandatory, right? No, those are for non-homicide crimes. Okay, so it's not mandatory. The problem here is that there's a situation where, even if you give somebody life with the possibility of parole, in your particular state, you can't be considered for 51 years. That's correct, Your Honor. But the Supreme Court has also told us that there's no categorical ban on life without parole for homicide offenses for juveniles. So there's no Supreme Court or federal law that requires parole for a juvenile offender convicted of a homicide crime. Right, it requires the exercise of sound discretion. That's what it requires. That's correct, Your Honor, and attendance circumstances that consider age. When you're considering a life without parole sentence, but there's no requirement of the constitutional obligation to look at attendance circumstances when you're looking at a life with the possibility of parole sentence. Okay, but counsel, let's just be realistic, okay? If you had a situation where the judge has three options, there's a death penalty, there's life without parole, and there's something you call life with parole. And what is life with parole? Life with parole is that it's possible that if you live to 90 years, you can get parole. Let's say that's what the rule is. I mean, would you say that that's constitutional? If that is the lowest sentence that a judge can give a juvenile convicted of murder, is that constitutional? The Supreme Court tells us that there's no constitutional violation under those circumstances. And this court in Goins v. Smith, where there was an 89-year sentence for... But there's a difference. We're talking about a mandatory sentence. You're saying that if the lowest sentence a judge has discretion to give a juvenile, no matter what the circumstances for murder, is effectively a full 90-year sentence without possibility of parole or anything, that would be constitutional. Under Supreme Court precedent, it is not unconstitutional, Your Honor. But those aren't the facts in this case. In this case, we're looking at 51 years. What the Supreme Court has told us in Montgomery is that the appropriate remedy for a Miller violation is for resentencing to life with the possibility of parole. In that case, they cited to a Wyoming statute that allows for parole after 25 years. The Supreme Court makes no determination as to whether 25 years, 50 years, or 100 years are appropriate for the possibility of parole to arise for a defendant. So this court has found previously that consecutive stack terms that result in an effective parole date 89 years later would be constitutional under Miller. The Supreme Court has told us in Montgomery that no less than 25 years would be appropriate, but makes no determination as to how long a defendant can't be in prison before he's eligible for parole. Okay, I do think there's a difference between whether something's constitutional and whether the decision that it is is unreasonable under Supreme Court law. And I think that, you know, can you make an argument that it doesn't fail deference? Yes, but to argue that a rule that permits parole at age 90 is constitutional under these cases, I just think is, you know, really makes it seem that you're really not considering the issues. Well, differing lower court opinions would support my conclusion, Your Honor. There's been several lower court opinions in Nebraska and Tennessee that support the conclusion that there's no Supreme Court precedent that requires a particular point in time at which parole needs to be obligated to a defendant. Well, you're quite right. There isn't, and that goes to a deference, but it's okay. Anything further? I would just say the petitioner has not been condemned to die in prison, Your Honor, and clearly established Supreme Court- Petitioner what? Petitioner has not been condemned to die in prison, Your Honor, and clearly established Supreme Court precedent tells us that in this particular instance, there's no constitutional violation where the defendant is offered an opportunity for parole after 51 years or 51 years plus the consecutive 11-year term for his additional conviction of attempted especially aggravated crime. So the way it would operate is it would be 51 years plus 3 pretty much? Yes and no, Your Honor. You also have to look at pretrial credits and good time credits. To an extent, the opportunity for parole is dependent on the defendant, so there's really no way of being exact on to when parole would become eligible for the defendant in this case. But that goes to the second sentence, right? I mean, as to the first sentence, I thought somebody did the math and with all the potential credits you could possibly get, it's 51 years. No, Your Honor. You're still eligible for the credits as applied to you under both convictions. So pretrial- 51 years is not a minimum. The minimum is actually less than 51. It could be. It could be, Your Honor. So if somebody is sentenced, say, on their 17th birthday and they get all the credit they could possibly get, they're exemplary, they do everything right, what's the earliest they could get parole? It's impossible to understand exactly, Your Honor, because good time credits and where you are in different institutions have different rules for how you can gain those credits and what you have to do. And it would also determine, in terms of pretrial, when you were- I thought the parties agreed it was 77 years of age. There was no agreement on that, Your Honor. That was what the appellant put in his brief. But that was only calculated if he served the entire 11-year sentence as well. But that's only- Give us your best estimate. If it's not 51, then what's your best estimate if the guy gets the most breaks that he could get? I mean, is it 50 or is it 30? It's not going to be 30, Your Honor. I mean, it's going to be close to whatever it would be before. I mean, assuming no credits, it would be 51 years plus 3.3 years because the consecutive 11-year sentence is only to be served at 30%. We know what the credits are in the federal system. It's 15%. So on average, what is it in Tennessee? I couldn't tell you, Your Honor. I wouldn't- Okay, fair enough. But the point is there's no particular determinative date as to exactly when the petitioner would be or would not be eligible for parole. But under the standard for habeas relief, the Supreme Court has not clearly established that even if you consider this sentence, the functional equivalent of life in prison, that that is a constitutional violation under Miller, Montgomery, or Graham, or Roper v. Simmons. All right, thank you. I just wanted to clarify a few things. First, the district court did essentially make a factual finding that Mr. Starks will not become eligible for parole within his life expectancy. And so that finding would be subject to clear error review. And if this court were to find clear error review, that it was clearly erroneous or not adequately supported by the record, we did ask for an evidentiary hearing in the district court at which we could have put on more extensive evidence about life expectancy and how incarceration impacts that and other evidence, and we were denied that hearing. So if the court were to find Judge Haynes' factual finding about life expectancy inadequately supported in the record, I think a remand would be appropriate. I could get us way off on the wrong track here, but you haven't exhausted that. You haven't presented that to the state court, have you? My memory is failing me a little on this. I believe that we presented some evidence about life expectancy, but merely through citation to the pleadings. Did you present your claim to the state court that this sentence is unconscionable based upon life expectancy and what the actual sentence will be at a minimum in this case? Okay. So Mr. Starks proceeded pro se in state court, and I believe that he did. The argument was based on life expectancy. So that argument was made to the state court, to my memory. On collateral review after Miller? There was a motion to reopen the post-conviction, and it was made in those proceedings that were filed after Miller. All right. The second point that I just wanted to address is I think Miller cannot turn exclusively on the name of the sentence. It has to have more meaning than that. And so as Judge White, as you were exploring with counsel, if the sentence were articulated as 100 years with no parole eligibility until you reach age 90, I can't imagine that anyone would disagree that that sentence violates Miller. And so where do we draw the line in what Miller's holding is? I think the appropriate place to draw it is at life expectancy and to just ensure that the words of Miller and Graham, that a meaningful opportunity for release has to exist. As evidence of that, every state that has amended its statutes to comply with Miller has afforded parole eligibility at a range between 15 and 40 years. Between what? 15 and 40 years. 15 and 40? 40. So there have been between 10 and 15 states that have amended their statutes to comply with Miller, and they have understood that Miller does not allow them to say, okay, fine, we will take life with parole off the books, and we will just put parole eligibility at 60 years or 70 years or something that exceeds life expectancy. They have understood that Miller requires that there be a meaningful opportunity for release. But what seems to be a hard argument for you to make is that if you're sort of tacitly conceding that 25 to 40 probably passes muster, this is 51, so now we're, I don't mean to minimize this if you're the person that's sitting in jail, but now we're talking about 11 years. So is the fact that it's 51 instead of 40, is that contrary to or an unreasonable application of? It may well be that the Supreme Court eventually says that in a direct appeal because obviously they don't establish these principles generally on collateral review, but they haven't done that yet. Well, a sentence that allows parole eligibility at 40 years, you're talking about a juvenile offender coming up for parole by the time he's 58 years old. Isn't that correct? I mean, if his offense occurred at the latest at age 18 and he has to serve 40 years, you're talking about him coming up for parole before he reaches the age of 60. And that complies with language from Miller and Montgomery that talk about a meaningful opportunity for release, that talk about restoring his hope of some years of life beyond prison. This sentence in Mr. Stark's case does neither of those things, and that's why it's unconstitutional. All right. I think we've got it. It's a difficult case, and we'll give it due consideration. Thank you, Counsel.